UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


RAYMOND J. CARTER,

                Petitioner,

v.                                          Case No. 3:09-cv-628-J-34JBT



SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,
                Respondents.
_____

**<u>ORDER</u>**

**<u>I. Status</u>**

Petitioner Carter initiated this action by filing a <u>pro</u> <u>se</u>
Petition for Writ of Habeas Corpus (Petition) (Doc. #1) under 28
U.S.C. § 2254 on May 28, 2009, pursuant to the mailbox rule.  He
challenges a 2001 state court (Duval County, Florida) judgment of
conviction for two counts of first degree murder, two counts of
attempted first degree murder, first degree arson, and armed
burglary with assault on six grounds.  Respondents have submitted
a memorandum in opposition to the Petition.  <u>See</u> Respondents'

Answer to Petition for Writ of Habeas Corpus and Response to Order to Show Cause (Response) (Doc. #18); Exhibits (Resp. Ex.) (Doc. #19).  On October 6, 2009, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. #14), admonishing Petitioner regarding his obligations and giving Petitioner a time frame in which to submit a reply.  Petitioner submitted a brief in reply on May 7, 2010.  <u>See</u> Petitioner's Reply to Respondents' Answer (Reply) (Doc. #24).  This case is ripe for review.

## II. Procedural History

On February 3, 2000, a grand jury issued a six-count Indictment that was ultimately superceded by an amended indictment, charging Petitioner with two counts of first degree murder (counts one and two), two counts of attempted first degree murder (counts three and four), one count of first degree arson (count five), and one count of armed burglary (count six).  Resp. Ex. B at 7-8, 289-92.  After jury selection, Carter proceeded to a jury trial.  Resp. Ex. C, Transcript of the Jury Trial (Tr.).  At the conclusion of the trial, a jury found Carter guilty, as charged.  Resp. Ex. B at 381-87, Verdicts; Tr. at 1399-1401.  On August 30, 2001, the trial court sentenced Carter to a term of life imprisonment without parole on count one; a concurrent term of life imprisonment without parole on count two; a concurrent term of thirty years of imprisonment on count three; a concurrent term of thirty years of imprisonment on count four; a concurrent term of thirty years of

2

imprisonment on count five; and a concurrent term of life imprisonment without parole on count six. Resp. Ex. B at 393-402.

On appeal, Petitioner, through counsel, filed an Initial Brief, arguing that the trial court erred in denying Petitioner's motion to suppress his January 26, 2000 statement. Resp. Exs. E; F. The State filed an Answer Brief and Supplemental Answer Brief. Resp. Exs. G; H. Petitioner filed a Reply Brief. Resp. Ex. I. On March 31, 2003, the appellate court affirmed Petitioner's conviction and sentence per curiam without issuing a written opinion. Carter v. State, 842 So.2d 112 (Fla. 1st DCA 2003); Resp. Ex. J. The mandate issued on April 16, 2003. Resp. Ex. K. Petitioner did not seek review in the United States Supreme Court.

On October 19, 2003, Petitioner filed a pro se motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850, see Resp. Ex. V at 1-35, and filed an amended motion in 2004, see id. at 36-53. In his requests for post conviction relief (Rule 3.850 motion), Petitioner alleged that his counsel was ineffective because he failed to: effectively cross-examine a State witness, Norman Gibson (ground one); call several material witnesses: Robert C. Stevens, Ms. Peeples, Prymus Brown, and a Fire Department K-9 Officer (ground two); present evidence of a lay witness that Norman Gibson had committed the crime (ground three); move for a mistrial based on the State's circumstantial evidence and prosecutorial misconduct relating to Jerry Bailey, the State

3

witness, informing the court that the prosecutor had told him to change his statement (amended motion, ground one); inform the jury that defense witness Tracy Henry was a drug user and also re-question her about the time she had seen Carter (amended motion, ground two); and properly investigate an autopsy report (amended motion, ground three).   The trial court conducted a <u>Huff</u> hearing[1] on March 1, 2007, at which Carter, proceeding <u>pro</u> <u>se</u>, had the opportunity to discuss his claims with the court.  Resp. Ex. L, Transcript of the March 1, 2007 Hearing.  On April 18, 2007, the trial court denied the motions for post conviction relief.  <u>Id</u>. at 87-95.   The court denied Petitioner's motion for rehearing on May 16, 2007.  <u>Id</u>. at  96-111, 112.

Petitioner appealed the denial of his Rule 3.850 motions and filed a brief.  Resp. Ex. N.  The State filed a notice that it did not intend to file an answer brief.  Resp. Ex. O.  Pursuant to the appellate court's order, the State ultimately responded.  Resp. Exs. P; Q.  On December 26, 2007, the appellate court affirmed in part, reversed in part, and remanded for an evidentiary hearing or for the court to attach those portions of the record that

---

[1] <u>Huff v. State</u>, 622 So.2d 982, 983 (Fla. 1993) (per curiam) (finding that, due to the severity of punishment at issue in a death penalty case, a circuit judge must hold a hearing on an initial motion for post conviction relief for the purpose of determining whether an evidentiary hearing is required and to hear legal argument relating to the motion).

conclusively refute the remaining claims.[2] <u>Carter v. State</u>, 970 So.2d 908, 909 (Fla. 1st DCA 2007); Resp. Ex. R.   The mandate issued on January 11, 2008.   Resp. Ex. S. The court denied Petitioner's motion for rehearing February 22, 2008.  Resp. Exs. T; U.

On remand, the post-conviction court denied Petitioner's Rule 3.850 motions and attached those portions of the record that conclusively refute his claims.  Resp. Ex. V at 116-298.  The court denied Petitioner's motion for rehearing on March 6, 2008.  <u>Id</u>. at 299-362, 363.

Petitioner appealed the denial of his Rule 3.850 motions and filed a brief.  Resp. Ex. X.  The State filed a notice that it did not intend to file an answer brief.  Resp. Ex. Y.  On October 6, 2008, the appellate court affirmed the denial per curiam, <u>see</u> <u>Carter v. State</u>, 993 So.2d 516 (Fla. 1st DCA 2008); Resp. Ex. Z, and the mandate issued on November 3, 2008, <u>see</u> Resp. Ex. BB.  The court denied Petitioner's motion for rehearing on December 9, 2008. Resp. Exs AA; DD.  Petitioner attempted to appeal to the Florida Supreme Court, but the court dismissed his appeal for lack of jurisdiction on December 11, 2008.  <u>Carter v. State</u>, 999 So.2d 644 (Fla. 2008); Resp. Ex. FF.

---

[2] The appellate court affirmed per curiam the trial court's denial of Petitioner's claim that defense counsel was ineffective for failing to call Mary Peeples as a witness "because the claim is conclusively refuted by the record."  <u>Carter v. State</u>, 970 So.2d 908, 909 (Fla. 1st DCA 2007).

On January 15, 2009, Petitioner filed a <u>pro</u> <u>se</u> petition for writ of habeas corpus in the Florida Supreme Court. Citing <u>Grate v. State</u>, 750 So.2d 625 (Fla. 1999) (per curiam),[3] the Florida Supreme Court dismissed the petition for lack of jurisdiction on January 23, 2009. <u>Carter v. State</u>, 2 So.3d 981 (Fla. 2009); Resp. Ex. II.

### III. One-Year Limitations Period

The Petition is timely filed within the one-year period of limitations. <u>See</u> 28 U.S.C. § 2244(d); Response at 6-9.

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id</u>. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess

---

[3] <u>See</u> <u>Grate v. State</u>, 750 So.2d 625, 626 (Fla. 1999) (per curiam) ("Regardless of how a petition seeking review of a district court decision is styled, this Court does not have jurisdiction to review per curiam decisions rendered without opinion and this Court's holding in <u>Jenkins [v. State</u>, 385 So.2d 1356 (Fla. 1980)] cannot be circumvented simply by seeking relief by filing an extraordinary writ petition.").

[Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

## V. Standard of Review

The Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d). This standard is described as follows:

> As explained by the Supreme Court, the phrase "'clearly established Federal law' . . . refers to the holdings . . . of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). We have held that to be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2003).

> As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:

>> A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context. An application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable. Questions of law and mixed questions of law and fact are reviewed de novo, as is the district

> court's conclusion regarding the
> reasonableness of the state court's
> application of federal law.
>
> Jennings v. McDonough, 490 F.3d 1230, 1236
> (11th Cir. 2007) (quotation marks and
> citations omitted).  In sum, "a federal habeas
> court making the 'unreasonable application'
> inquiry should ask whether the state court's
> application of clearly established federal law
> was objectively unreasonable." Williams, 529
> U.S. at 409, 120 S.Ct. at 1521.  Finally, 28
> U.S.C. § 2254(e)(1) commands that for a writ
> to issue because the state court made an
> "unreasonable determination of the facts," the
> petitioner must rebut "the presumption of
> correctness [of a state court's factual
> findings] by clear and convincing evidence."[4]
> 28 U.S.C. § 2254(e)(1).

Ward v. Hall, 592 F.3d 1144, 1155-56 (11th Cir. 2010), cert.

denied, 131 S.Ct. 647 (2010).

Finally, for a state court's resolution of a claim to be an

adjudication on the merits, so that the state court's determination

will be entitled to deference for purposes of federal habeas corpus

review under AEDPA, all that is required is a rejection of the

claim on the merits, not an opinion that explains the state court's

rationale for such a ruling. Harrington v. Richter, 131 S.Ct. 770,

785 (2011) (holding that section 2254(d) does not require a state

court to give reasons before its decision can be deemed to have

been adjudicated on the merits); Wright v. Sec'y for the Dep't of

---

[4] This presumption of correctness applies equally to factual
determinations made by state trial and appellate courts." Bui v.
Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted)
(citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

<u>Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003).   Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

## VI. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel.   That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id</u>., at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id</u>., at 687, 104 S.Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

> different.[5] A reasonable probability is a
> probability sufficient to undermine confidence
> in the outcome."[6]  Id., at 694, 104 S.Ct.
> 2052.  It is not enough "to show that the
> errors had some conceivable effect on the
> outcome of the proceeding."  Id., at 693, 104
> S.Ct. 2052.  Counsel's errors must be "so
> serious as to deprive the defendant of a fair
> trial, a trial whose result is reliable."
> Id., at 687, 104 S.Ct. 2052.

Harrington, 131 S.Ct. at 787-88.

The two-part Strickland test applies to ineffective assistance claims concerning both the decision to accept a guilty plea offer and the decision to forgo a plea offer and stand trial.  Hill v. Lockhart, 474 U.S. 52, 58-59 (1985).  Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa."  Ward, 592 F.3d at 1163 (citation omitted).  "Surmounting Strickland's high bar is never an easy task."  Harrington, 131 S.Ct. at 788 (quoting Padilla v. Kentucky, 130 S.Ct. 1473, 1485 (2010)).

---

   [5] In the context of an ineffective assistance challenge to the voluntariness of a guilty or no contest plea, Petitioner must show there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59 (1985).

   [6] See Davis v. Sec'y for the Dep't of Corr., 341 F.3d 1310, 1316 (11th Cir. 2003) (per curiam) (citation omitted) ("[W]hen a defendant raises the unusual claim that trial counsel, while efficacious in raising an issue, nonetheless failed to preserve it for appeal, the appropriate prejudice inquiry asks whether there is a reasonable likelihood of a more favorable outcome on appeal had the claim been preserved.").

A state court's adjudication of an ineffectiveness claim is accorded great deference. "The standards created by Strickland and § 2254(d) are both 'highly deferential,' [Strickland], at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, Knowles[7], 556 U.S., at ----, 129 S.Ct. at 1420." Harrington, 131 S.Ct. at 788.

> The question "is not whether a federal court believes the state court's determination" under the Strickland standard "was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro, supra, at 473, 127 S.Ct. 1933. And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

Knowles v. Mirzayance, 556 U.S. 111, 123 (2009); see also Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision.").

---

[7] Knowles v. Mirzayance, 556 U.S. 111 (2009).

## VII. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Carter claims that counsel (Refik Werner Eler) was ineffective because he failed to impeach Norman Gibson's trial testimony with "his statements in deposition and police reports." Petition at 22.  As acknowledged by the parties, Petitioner raised this claim in his Rule 3.850 motion.  Identifying the two-prong Strickland ineffectiveness test as the controlling law, the trial court denied the Rule 3.850 motion with respect to this issue, stating:

> In "Ground One" of the Defendant's original motion, he contends that his court-appointed counsel at the trial level (Mr. Refik Eler, Esquire, of Jacksonville, Florida) provided ineffective assistance by failing to effectively cross-examine a State witness, Norman Gibson.
>
> A. With respect to the Defendant's concern about whether or not Mr. Gibson could identify the defendant in the Mercury Cougar as it drove near the burning structure, Mr. Gibson testified at trial he could not (Transcript, p. 298). It would not be "effective" for the defense to cross-examine Mr. Gibson and bring out that, at some earlier time, Mr. Gibson did say he saw the Defendant in the car.
>
> B. With respect to the Defendant's concern about whether or not the Mercury Cougar was parked at a house on Ashley Street, a review of the trial transcript (Transcript, p. 286) shows that Mr. Gibson did place the Cougar parked outside a residence on Ashley Street at one point in time. It would not be sound strategy for the Defense to impeach Mr. Gibson about that point, since the placement

of the vehicle away from the scene of the crime would be of potential benefit to the Defendant, and cross-examination by impeachment from a prior inconsistent statement would diminish that benefit. It would not be sound strategy for defense counsel to impeach Mr. Gibson on a point that could be argued to the Defendant's benefit.

C. With respect to Mr. Gibson's testimony about the Defendant's threat to burn Mr. Gibson (or everyone) out of the house (Transcript, pp. 280-281), a fair reading of Mr. Gibson's testimony leaves no "inconsistency" and that, regardless of Mr. Gibson's use of particular words in communicating with the police at the scene or with the jury at trial, Mr. Gibson testified that the Defendant communicated a threat to set fire to the house. There was no "inconsistency" in the message conveyed: the Defendant's "little statement" (Mr. Gibson's phrasing during his testimony) was still a serious, deadly threat.

D. With respect to the Defendant's allegation regarding Mr. Gibson's actions after their initial confrontation, Mr. Gibson's statements regarding leaving the house to "get a pistol," "get the owner," and/or "call the police" are not inconsistent. Mr. Gibson could have done, or intended to do, all three. Indeed, he also testified he "went to [his] brother's" to try and obtain a pistol. (Transcript, p. 281)

E. With respect to the Defendant's concern that Mr. Gibson may have initially maintained that he did not use drugs, there is no question, from the State's opening statement through all the testimony elicited during the trial, that all occupants of the burned structure, including Mr. Gibson, used drugs. It would be of no true impeachment value to show that, at some point in time, Mr. Gibson told someone he did not use drugs.

13

> F. A fair reading of Mr. Gibson's trial
> testimony shows significant benefit achieved
> for the Defendant from all the various points
> made during cross-examination by his defense
> counsel. No prejudice could arise based on the
> matters raised by the Defendant in Ground 1.
> The record (or logic itself) refutes all
> aspects of the Defendant's first allegation,
> and the allegations contained in Ground One
> are hereby denied, based on the record itself.

Resp. Ex. V at 88-90.  Upon Petitioner's appeal, with respect to

this claim, the appellate court reversed and remanded for an

evidentiary hearing or for the court to attach those portions of

the record that conclusively refute the claim.  See Carter, 970

So.2d 909.  On remand, the post-conviction court[8] denied

Petitioner's motion and attached the transcript of Gibson's trial

testimony and a supplement to the homicide reports.  See Resp. Ex.

V, Attachments A and B, at 117-218.  On Petitioner's appeal, the

appellate court affirmed the denial per curiam.  Carter, 993 So.2d

516.

Assuming the appellate court affirmed the denial of the Rule

3.850 motion as to this claim on the merits, there are qualifying

state court decisions.  Therefore, this claim will be addressed

applying the deferential standard for federal court review of state

court adjudications required by AEDPA.  After a review of the

record and the applicable law, the Court concludes that the state

---

[8] Circuit Judge L. Page Haddock initially denied the Rule
3.850 motion and again denied the motion after the remand.  See
Resp. Ex. V at 94, 116.

courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law.  Nor were the adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to relief on the basis of this claim.

Alternatively, if the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is, nevertheless, without merit.  The record supports the trial court's conclusion.  In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence.  The presumption that counsel's performance was reasonable is even stronger when, as in this case, counsel is an experienced criminal defense attorney.[9] The inquiry is "whether,

---

[9] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc), cert. denied, 531 U.S. 1204 (2001); see Williams v. Head, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting that "[i]t matters to our analysis" whether the attorney is an experienced criminal defense attorney), cert. denied, 530 U.S. 1246 (2000).  Refik Werner Eler was admitted to the Florida Bar in 1987. See http://www.floridabar.org.  Moreover, this Court takes judicial notice of the record in Stephens v. McNeil, et al., Case No. 3:08-cv-260-J-32JRK, in which Eler testified that he prosecuted for the State of Florida from 1986 to 1989 and thereafter practiced primarily criminal defense law through 2004.  See Case No. 3:08-cv-260-J-32JRK, Doc. #14, Exhibit. EE, Evidentiary Hearing Transcript, at 29-30.  Thus, at the time of Carter's 2001 criminal trial, Eler had been practicing criminal defense law for over twelve years.

in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted). Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. Dingle v. Sec'y for Dept. of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted), cert. denied, 552 U.S. 990 (2007). Petitioner has failed to carry this burden.

Given the record, counsel's performance was within the wide range of professionally competent assistance. Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice. Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had impeached Gibson's testimony with his previous statements in deposition and police reports. Therefore, Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

## B. Ground Two

As ground two, Petitioner claims that counsel was ineffective because he failed to call five material witnesses: Robert C. Stevens, Mary Peeples, Prymus Brown, Adrian Hughes, and Dexter Picket.   As acknowledged by the parties, Petitioner raised this claim in his Rule 3.850 motion.   After identifying the two-prong <u>Strickland</u> ineffectiveness test as the controlling law, the trial court denied the Rule 3.850 motion as to this issue, stating:

> In "Ground Two" of the Defendant's original motion, he contends that his counsel provided ineffective assistance by failing to call "five material witnesses."
>
> A.  The sole reference regarding Mr. Stevens is found in a supplement to the Homicide report provided to the Defendant during the discovery process: "Robert C. Stevens, 1-14-68 W/M Gator Office Furniture, 356-3611; stated he saw the fire around 0645. Himself and Nicholas W. Levine 12-12-78 W/M ran over and saw the front of the house on fire. He stated a B/M was in the back of the house and a W/F was in the front. He stated the W/F jumped out where he was standing and he pulled her to safety. Robert said she was limp and not able to talk."[10] Even assuming that the witness would be available and would testify as noted above (which was not sufficiently raised in the motion), such testimony could not materially affect the outcome of the case: the white female victim (Ms. Andreola) jumped out from the second floor of the burning structure, suffering serious injuries which resulted in her death. It is irrelevant whether, and at what points in time, she could or could not "reach," or could or could not "talk." It is not

---

[10] <u>See</u> Resp. Ex. V, Attachment A, at 218.

necessarily contradictory that her bloody hand prints were found at a particular window in the rear of the burning structure, and Mr. Stevens' testimony could not reasonably be expected to alter the outcome of the trial. No potential prejudice can be shown.

B. The Defendant next alleges "Peeples[11] in her deposition said that Gibson was not at her house." A copy of Ms. Peeples' deposition was provided as an attachment to the State's response.[12] Ms. Peeples clearly described her physical encounter, at her house, that morning, with Mr. Gibson. The Defendant's allegation is directly refuted by the record. Furthermore, it is counterintuitive for the Defendant to suggest that his counsel should have called Ms. Peeples as a defense witness, when she also described in her deposition Mr. Gibson's frantic actions upon noticing that his house, down the street, was on fire. Ms. Peeples' testimony, if called by the Defendant to testify, would arguably destroy (or, at minimum, seriously detract from) the defense theory that Mr. Gibson could have been responsible for the fire (leaving only the argument that the fire was accidental).

C. The Defendant next alleges Prymus Brown could have testified that the Defendant was asleep on Main Street in a car "at time of offense." In the next paragraph, he alleges Adrian Hughes would have testified that "the Defendant was having a conversation with Hughes." These two allegations are somewhat mutually exclusive, showing the contradictory nature of the Defendant's allegations. This arson and these murders were not a crime (like, for example, a purse snatching) that started and finished within seconds. There was no specific "time of offense." The jury found that the Defendant set a fire, which took time

---

[11] Mary Peeples is also known as "Diamond."  Tr. at 293, 308, 342; Resp. Ex. V, Attachment F, at 279.

[12] See Resp. Ex. V, Attachment F, at 278-98.

to flare, and which had a whole, multi-story building to consume. No matter how many witnesses the Defendant produced, who would testify that he was seen at various nearby locations at various points in time between 4:30 AM and 10:00 AM that morning, he would not be able to effectively raise the issue of "alibi." He presented his theory by his own testimony that he was elsewhere when the fire was set, and the jury did not believe him.

D. The Defendant next alleges that a Fire Department K-9 officer whose K-9 allegedly did not detect the odor of accelerant on his clothes, should have been called as a witness to refute the expert testimony of the laboratory expert. The Court finds that the testimony of an expert would not and could not be effectively refuted by the canine's sense of smell.

The allegations in Ground 2 are hereby denied as either refuted by the record, or insufficiently pled to raise any legitimate claim of ineffectiveness.

Resp. Ex. V at 90-92. Upon Carter's appeal, the appellate court affirmed the trial court's denial of his claim that defense counsel was ineffective for failing to call Mary Peeples as a witness "because the claim is conclusively refuted by the record." Carter, 970 So.2d 909. Additionally, the appellate court reversed and remanded for an evidentiary hearing or for the court to attach those portions of the record that conclusively refute the remaining portions of his claim. See id. On remand, the post-conviction court denied Petitioner's motion and attached a supplement to the homicide reports, as record support for court's denial. See Resp. Ex. V, Attachment A, at 214-218. On Petitioner's appeal, the

19

appellate court affirmed the denial per curiam.  Carter, 993 So.2d 516.

Given the record in the instant action, the appellate court may have affirmed the denial of Petitioner's motion for post conviction relief on the merits.  If the appellate court addressed the merits, Petitioner would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA.  After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law.  Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is still without merit.  Petitioner has failed to overcome the strong presumption in favor of the competence of defense counsel, especially given counsel's extensive criminal defense experience.  Based on the record in the instant case, counsel's performance was within the wide range of

professionally competent assistance.  None of the listed witnesses
would have been beneficial to the defense and some may have even
distracted from the theory of the defense.

Even assuming arguendo deficient performance by defense
counsel, Petitioner has not shown prejudice.  Petitioner has not
shown that a reasonable probability exists that the outcome of the
case would have been different if counsel had called the five
witnesses.  Testifying at trial, Carter explained that he was not
at the scene when the fire was set; however, the jury did not
believe his story. Petitioner's ineffectiveness claim fails because
he has not shown either deficient performance or resulting
prejudice.

## C. Ground Three

As ground three, Petitioner claims that counsel was
ineffective because he failed to object to the trial court's ruling
that the opinion testimony of William Green, a lay witness, was not
admissible.  Petitioner raised this ground in his Rule 3.850
motion, and ultimately, the court denied the motion with respect to
this claim, stating in pertinent part:

> In "Ground Three," the Defendant contends
> that his counsel provided ineffective
> assistance because he did not get into
> evidence the opinion of a lay witness that
> Norman Gibson committed the crime. The
> Defendant has completely misinterpreted the
> evidentiary provision regarding the
> admissibility of lay opinion testimony. See
> Section 90.701, Florida Statutes. An opinion
> of a lay witness, based on supposition or

> hearsay, as opposed to an opinion based on
> eyewitness observation(s) by the particular
> witness, would not be admissible. The matter
> was raised at trial, and the Court properly
> ruled on the issue (Transcript, p. 396). This
> issue was, therefore, cognizable on direct
> appeal, and cannot be raised herein. The jury
> in this Defendant's case decided the ultimate
> issue, as the law requires. The Defendant's
> allegation is also insufficiently pled, and
> the Court hereby denies Ground Three.

Resp. Ex. V at 92. Following an appeal by Carter, with respect to this claim, the appellate court reversed and remanded for an evidentiary hearing or for the court to attach those portions of the record that conclusively refute the claim. See Carter, 970 So.2d 909. The post-conviction court, on remand, denied Petitioner's motion with respect to this claim and attached the relevant portion of the trial transcript that conclusively refutes the claim. See Resp. Ex. V, Attachment C, Court's Ruling on Lay Opinion Objection, at 219-23. On Petitioner's appeal, the appellate court affirmed the denial per curiam. Carter, 993 So.2d 516.

The appellate court may have affirmed the denial of the post conviction motion on the merits. If the appellate court addressed the merits, there are qualifying state court decisions. Assuming so, this claim will be addressed applying the deferential standard for federal court review of state court adjudications. Having reviewed the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an

unreasonable application of clearly established federal law, and
were not based on an unreasonable determination of the facts in
light of the evidence presented in the state court proceedings.
Thus, Petitioner is not entitled to relief on the basis of this
claim.

Moreover, even absent a decision entitled to deferential
review under AEDPA, this Court finds this challenge to be without
merit.   The trial court's conclusion is fully supported by the
record.   At trial, William Green testified that he and his wife
(Vanessa Green) lived next door to Carter in the rooming house on
Weare Street on January 19, 2000.   Tr. at 357-58.   Green described
the events of the previous evening and following morning when his
wife died in the house fire.   Id. at 361-70.   On cross-examination,
defense counsel inquired as to whether Green had a conversation
with Jerry Bailey (another neighbor) about Norman Gibson, the
property overseer who also lived in the rooming house at the time
of the incident.   Id. at 388.   The prosecutor objected on grounds
of relevance and soliciting testimony outside the scope of the
direct examination.   Id.   After Green was excused, id. at 393, the
following colloquy transpired outside the presence of the jury.

> [DEFENSE COUNSEL]: Judge, I may recall
> him, I don't know at this point, especially in
> light of their objection beyond the scope and
> I certainly would object to him being in the
> room.
>
> [PROSECUTOR]: The statute provides –

THE COURT: Y'all [sic] find m[e] the statute and show it to me right before we resume and we'll talk about it. I'm familiar with it but I haven't read it in some time and I want to.

[PROSECUTOR]: The other thing is I didn't file [a] motion in limine because I really had no idea this would be attempted to be brought into but I believe Mr. Eler, through asking Mr. Green about conversations that he had with Jerry Bailey, is trying to bring out the fact the two of them speculated that they thought Norman [Gibson] had something to do with this, not based on any facts. And you know, once that question is asked it can't be un-asked. And so I would orally move to limit that area as calling for speculation.

THE COURT: Well I permitted the question and answer assuming he was laying the predicate for something admissible. Certainly if two people are just talking and saying I think Norman did it or something, that clearly is not admissible. So just be guided by that, Mr. Eler.

[DEFENSE COUNSEL]: Yes, sir.

THE COURT: If there is somewhere else you're going, you know the Rules of Evidence permit you to do [sic] pursue any theory of defense that is relevant but not two people speculating.

[DEFENSE COUNSEL]: Yes, sir.

Id. at 395-96.

The trial judge's evidentiary ruling was correct. Additionally, a lay witness's opinion testimony may only address what he or she perceived, not what he or she speculated; neither is it an opportunity for that witness to provide inadmissible hearsay. See Fla. Stat. § 90.701 (1999). Petitioner has failed to overcome

the strong presumption in favor of the competence of defense counsel.   Given the record, counsel's performance was within the wide range of professionally competent assistance.

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice.   Carter presented his own defense theory when he testified that he was not at the house when the fire was set, but the jury did not believe his account. Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had objected to the trial judge's ruling, thus preserving the claim for appeal.[13]   Therefore, Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

## D. Ground Four

As ground four, Petitioner claims that counsel was ineffective because he failed to move for a mistrial based on the State's circumstantial evidence and prosecutorial misconduct.   Petitioner raised this ground in his Rule 3.850 motion, and the court later denied the motion with respect to this claim, stating in pertinent part:

> [T]he Defendant argues that his counsel was ineffective in failing to "move for a mistrial

---

[13] See Davis, 341 F.3d at 1316 (stating the appropriate prejudice inquiry is whether there is a reasonable likelihood of a more favorable outcome on appeal had counsel preserved the claim for appeal).

> when the only evidence being possessed by the
> State was circumstantial and due to
> prosecutorial misconduct when the state
> witness Jerry Bailey told the Court that the
> Prosecutor told him to change his statement."
> The Defendant appears to be speculating,
> without any substantiation for his allegation.
> The transcript amply reflects (Transcript, pp.
> 445-448) the very forceful cross-examination
> of Mr. Bailey by the defense counsel. Mr.
> Bailey freely admitted his previous lies
> regarding the location of the decedent victim,
> Ms. Andreola, at the moment Mr. Bailey noticed
> the building was on fire. The transcript also
> reflects that the State advised Mr. Bailey, at
> some point before trial, that he reportedly
> provided contrary information to Norman
> Gibson. This provides nothing more than an
> honest effort by the State to ascertain the
> truth. There is no indication he was told to
> change his testimony. There is nothing to
> suggest that his testimony resulted from any
> misconduct on the part of anyone.   The Court
> therefore denies this Ground based first, on
> the record.

Resp. Ex. V at 92-93.  Following Petitioner's appeal, with respect

to this claim, the appellate court reversed and remanded for an

evidentiary hearing or for the court to attach those portions of

the record that conclusively refute the claim.  See Carter, 970

So.2d 909.  The post-conviction court, on remand, denied

Petitioner's motion with respect to this claim and attached the

relevant portion of the trial transcript that conclusively refutes

the claim.   See Resp. Ex. V, Attachment D, Testimony of Jerry

Bailey, at 224-56.  On Petitioner's appeal, the appellate court

affirmed the denial per curiam.  Carter, 993 So.2d 516.

Assuming the appellate court affirmed the denial on the merits, there are qualifying state court decisions. Thus, the Court considers this claim in accordance with the deferential standard for federal court review of state court adjudications. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Moreover, even assuming the state courts' adjudications of this claim are not entitled to deference, Petitioner's ineffectiveness claim is without merit. The trial court's conclusion is fully supported by the record. Jerry Bailey, a neighbor who lived next door to Carter in the rooming house, testified about what transpired the previous evening and morning of the house fire. Tr. at 398-417. On cross-examination, defense counsel inquired as follows:

> [DEFENSE COUNSEL]: Okay. You go to your brother's, how soon was it after this fire that you went to the police and told the police what happened? I'm assuming the fire was early Wednesday morning, the 19th of January; can you give us an idea, was it [a] week or two weeks or the next day?

[JERRY BAILEY]: Well, I didn't -- it was in April before I talked to anyone about the fire, you know, any police officer about the fire.

[DEFENSE COUNSEL]: Okay.  They come [sic] and found you?

[JERRY BAILEY]: Yes.

[DEFENSE COUNSEL]: Okay.  And at that time I think they took a sworn statement from you, right?

[JERRY BAILEY]: Yes.

[DEFENSE COUNSEL]: Where a court reporter was present also and [you] swore to tell the truth, and they asked you about the white female, right?

[JERRY BAILEY]: Yes.

[DEFENSE COUNSEL]: And you said she wasn't in your room, you didn't know where she was, right?

[JERRY BAILEY]: Yes.

[DEFENSE COUNSEL]: Then a little later after that, several months later, I believe Patrick McGuinness, not myself, took your deposition, where Miss Starrett was in her office maybe with Mr. McGuinness, maybe his office, and they again asked you about the white female and you said under oath that you didn't know where she was, she wasn't in the room, right, when they took your deposition?

[JERRY BAILEY]: The first time we was downtown.

[DEFENSE COUNSEL]: With the police?

[JERRY BAILEY]: Yes.

[DEFENSE COUNSEL]: That's the sworn statement, the defense attorney wasn't there

28

at that time, just you, Miss Starrett and the police, right?

[JERRY BAILEY]: I guess.

[DEFENSE COUNSEL]: Okay.  Well did there come another time when Mr. McGuinness was there asking you some questions like this about the fire, he's maybe a little shorter, maybe a little pudgier than me, maybe not, you don't remember him?

[JERRY BAILEY]: No.

[DEFENSE COUNSEL]: Be that as it may, at some point April, I think, of this year, March or April, is when you first came to Miss Starrett or to the detectives or they came to you and said she was in your room, right?

[JERRY BAILEY]: I remember saying that she was in my room but I don't think it was March or April.

[DEFENSE COUNSEL]: Okay.  Forget about the date, that's really not important.  Did you go to Miss Starrett and tell her that you had lied to the police, that you lied in deposition, that she was really in your room, did you go to her or did they come to you?

[JERRY BAILEY]: They came to me.

[DEFENSE COUNSEL]: And what did they tell you?

[JERRY BAILEY]: That Norman said he seen the girl go in my room.  No, I take that back. That Norman said that I told him the girl was in my room.

[DEFENSE COUNSEL]: And you told him that, didn't you?

[JERRY BAILEY]: No.

[DEFENSE COUNSEL]: You never told him that?

[JERRY BAILEY]: No.

[DEFENSE COUNSEL]: But you told Miss Starrett that?

[JERRY BAILEY]: Yes.

[DEFENSE COUNSEL]: The real reason, sir, isn't it true that you didn't tell the police the first time or didn't stay around because you knew you had warrants out and you were afraid even if you told them that back then that you'd be arrested, kind of worried about that, more so than this unfamiliar voice?

[JERRY BAILEY]: Well, I wasn't that concerned about the warrants because being child support and I was paying and I was working so I wasn't that concerned about the warrants, I was mainly concerned about, you know, me being accused of her being outside my window.

[DEFENSE COUNSEL]: Well –

[JERRY BAILEY]: And, you know, the fellow hollering about if he find her up in there he's going to kill everybody up in the house.

[DEFENSE COUNSEL]: Well you didn't set this fire, did you?

[JERRY BAILEY]: No.

[DEFENSE COUNSEL]: Okay.  And you didn't push this girl out your window, did you?

[JERRY BAILEY]: No.

[DEFENSE COUNSEL]: Okay.  So you just thought they'd blame you?

[JERRY BAILEY]: Yes.

[DEFENSE COUNSEL]: And you knew before you left that evening that the white female was on the ground outside, didn't you?

30

[JERRY BAILEY]: I heard Norman say she was on the ground, yeah.

Id. at 444-48.

Petitioner has not demonstrated sufficient grounds upon which counsel could base a motion for mistrial. Despite Carter's assertions, the record reflects that law enforcement or the Assistant State Attorney, as part of the investigation of the crimes, approached Jerry Bailey, as a potential witness to the crimes, to determine why his account of the events did not match other evidence that had been obtained. And, upon being confronted with such an inquiry, Bailey conceded that his prior statements were untrue. Thus, given the record, counsel's performance was within the wide range of professionally competent assistance.

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice. Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had moved for a mistrial based on such meritless grounds. Therefore, Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

## E. Ground Five

As ground five, Petitioner claims that counsel was ineffective because he failed to adequately inform the jury that defense witness Tracy Henry was "an active drug user" and "that testimonial evidence existed within the record that indicated that drug use by

31

witness Henry may have influenced contradicting testimony previously given by witness Henry in a deposition, as opposed to witness Henry's trial testimony." Petition at 16. Petitioner raised this ground in his Rule 3.850 motion, and the court denied the motion with respect to this claim, stating in pertinent part:

> [H]e contends that his counsel provided ineffective assistance because he "should have informed the jury that the Defense witness Tracy Henry was a drug user," and that he failed to "requestion [her] about the time she seen the Defendant." A fair reading [of] the [sic] Ms. Henry's testimony, which comprised only about 18 pages out of a 1200+ page trial transcript,[14] reveals that Defendant's counsel did ask Ms. Henry to specify, as best she could, the time that morning she had seen the Defendant.[15] Furthermore, Defendant's counsel obviously wanted to present evidence about Mr. Gibson's conversation with a relative of the building owner regarding fire insurance matters and/or issues regarding the absence of fire extinguishers.[16] That testimony was useful to the Defense, and it is counterintuitive for the Defendant to now assert he wanted his own witness impeached regarding drug use. Status as a drug user is not proper impeachment evidence under any circumstance,[17] and it is counterproductive

---

[14] See Tr. at 1192-1210.

[15] See Tr. at 1196-97.

[16] See Tr. at 1194-95.

[17] Indeed, a witness's drug abuse can be used for impeachment purposes in the federal courts as well as the Florida courts. See Eleventh Circuit Pattern Jury Instructions (Criminal) 1.3 (2010) ("You must consider some witnesses' testimony with more caution than others. For example, a witness may testify about events that occurred during a time when the witness was using addictive drugs, and so the witness may have an impaired memory of those events."); Fla. Stat. § 90.608(4)(2000) ("Any party, including the party

> to impeach your own witness who is providing
> the most favorable testimony possible. The
> Court therefore denies this Ground based on
> the record, and based on simple logic.

Resp. Ex. V. at 92-93. On Carter's appeal, the appellate court, as

to this claim, reversed and remanded for an evidentiary hearing or

for the court to attach those portions of the record that

conclusively refute the claim. See Carter, 970 So.2d 909. On

remand, the post-conviction court denied Carter's motion as to this

claim and attached the relevant portion of the trial transcript.

See Resp. Ex. V, Attachment E, Testimony of Tracy Henry, at 257-77.

On Petitioner's appeal, the appellate court affirmed the denial per

curiam. Carter, 993 So.2d 516.

Assuming the appellate court affirmed the denial of the Rule

3.850 motion as to this claim on the merits, there are qualifying

state court decisions. Therefore, this claim will be addressed

---

calling the witness, may attack the credibility of a witness by:
[s]howing a defect of capacity, ability, or opportunity in the
witness to observe, remember, or recount the matters about which
the witness testified."); Edwards v. State, 548 So.2d 656, 658
(Fla. 1989) (stating that evidence of drug use for the purpose of
impeachment is excluded unless: "(a) it can be shown that the
witness had been using drugs at or about the time of the incident
which is the subject of the witness's testimony; (b) it can be
shown that the witness is using drugs at or about the time of the
testimony itself; or (c) it is expressly shown by other relevant
evidence that the prior drug use affects the witness's ability to
observe, remember, and recount"). Thus, given that a witness's drug
abuse, with a proper showing, can be used for impeachment purposes
in the Florida courts, this Court will not rely on that portion of
the trial judge's decision stating otherwise, especially when the
appellate court reversed his decision and remanded the case for
further review.

applying the deferential standard for federal court review of state court adjudications.    After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law.    Nor were the adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Alternatively, if the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is, nevertheless, without merit.    The record supports the trial court's conclusion.    Petitioner has failed to establish that counsel's performance, in not impeaching the credibility of a defense witness who had provided helpful testimony, was deficient. Given the record, counsel's representation was within the wide range of professionally competent assistance.    Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice.    Therefore, Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

### F. Ground Six

As ground six, Petitioner claims that counsel was ineffective because he failed to properly investigate the autopsy report of Andreola, one of the victims.   Expressing concern about Bailey's proximity to Andreola while in the burning house, Carter asserts that counsel should have investigated the autopsy report to determine Andreola's physical condition within the burning house before she jumped out of a window.   Petition at 18.   Petitioner raised this ground in his Rule 3.850 motion, and ultimately the court denied the motion with respect to this claim, stating in pertinent part:

> [H]e contends that his counsel provided ineffective assistance because Mr. Eler failed to properly investigate an autopsy report. The Defendant's allegation appears wholly imaginary, and there is no scientific or factual basis for his allegation. Even if there were some factual or scientific matters that would directly refute Mr. Bailey's testimony, he admitted during his testimony, under oath, that he had previously lied. Nothing stated by the Defendant in this Ground even remotely suggests a cognizable claim of ineffectiveness. The Court therefore denies this Ground as insufficiently pled to raise a cognizable issue.

Resp. Ex. V at 94.   Following Carter's appeal relating to this issue, the appellate court reversed and remanded for an evidentiary hearing or for the court to attach those portions of the record that conclusively refute the claim.   See Carter, 970 So.2d 909. The

35

post-conviction court, on remand, denied Petitioner's motion as to this issue and attached the relevant portion of the trial transcript.   See Resp. Ex. V, Attachment D, Testimony of Jerry Bailey, at 224-56. On Petitioner's appeal, the appellate court affirmed the denial per curiam.   Carter, 993 So.2d 516.

Assuming the appellate court affirmed the denial on the merits, there are qualifying state court decisions.   Thus, the Court considers this claim in accordance with the deferential standard for federal court review of state court adjudications. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.   Thus, Petitioner is not entitled to relief on the basis of this claim.

Moreover, even assuming the state courts' adjudications of this claim are not entitled to deference, Petitioner's ineffectiveness claim is without merit.   The trial court's conclusion is fully supported by the record.   Given the record, including Associate Medical Examiner Areford's testimony relating

to Andreola's autopsy (Tr. at 815-34)[18] as well as Bailey's testimony (id. at 398-450), counsel's representation was within the wide range of professionally competent assistance.  Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice.  Therefore, Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

### VIII. Conclusion

Upon consideration of the foregoing, the undersigned finds that "[u]nder the doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard, see Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam)," Petitioner's ineffective assistance claims fail.  Knowles, 556 U.S. at 123.  Accordingly, for these reasons, the Petition will be denied, and this case will be dismissed with prejudice.

### IX. Certificate of Appealability
### Pursuant to 28 U.S.C. § 2253(c)(1)

If Petitioner seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted.  This Court should issue a certificate of appealability only if the Petitioner makes "a

---

[18] Dr. Areford concluded that Andreola's death, six days after the incident, was caused from "thermal injuries caused by breathing in the smoke and cervical spinal cord fracture" as a result of jumping out of the window of the burning house.  Tr. at 827.

substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.   The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.   If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

4.   The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 29th day of May, 2012.

**MARCIA MORALES HOWARD**
United States District Judge

sc 4/30
c:
Raymond J. Carter
Ass't Attorney General (Heller)